IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| JOSHUA KNEPPER, LESLIE LUM-KING, <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL BURGER, *et al.*, <br><br> Defendants. | Case No. 22-cv-00556-DKW-WRP <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY AND COUNTY OF HONOLULU'S PARTIAL MOTION TO DISMISS** |

Defendant City & County of Honolulu (City) moves for partial dismissal (motion to dismiss) of the claims alleged in Plaintiffs Joshua Knepper (Knepper) and Leslie Lum-King's (Lum-King, and, collectively, Plaintiffs) Amended Complaint (FAC), which arise out of events following an April 2022 traffic stop involving Plaintiffs and Defendants Michael Burger, Allen-John Vergura, Frederick Apo, and Leonardo Juarez (collectively, Officer Defendants). Principally, the City argues that the claims asserted against it have not been adequately pled under pertinent legal standards and/or fail as a matter of law.

Having reviewed the motion to dismiss and its related briefing, the Court agrees with the City in part. Specifically, the Court agrees that Plaintiffs have not alleged an official policy of the City or ratification of the Officer Defendants' conduct for purposes of their claim under *Monell v. Dep't of Soc. Services of the City*

*of New York*, 436 U.S. 658 (1978). The Court further agrees that Plaintiffs have not alleged a *standalone* Fourteenth Amendment claim—in fact, Plaintiffs acknowledge as much in their opposition to the motion to dismiss. The Court also agrees that Plaintiffs have failed to adequately allege a claim for negligent training, supervision, or retention under State law. The Court disagrees, however, that under federal pleading standards, Plaintiffs have failed to allege an unofficial custom under *Monell*, particularly given that the Court declines to consider the material outside of the Amended Complaint upon which the City relies to challenge Plaintiffs' allegations. In addition, with respect to those claims dismissed herein, because this is the first occasion for the Court to address arguments concerning the same, dismissal is with leave to amend, to the extent permitted below.

## BACKGROUND

### I.  The Alleged Incident

The FAC alleges that the following events took place on April 7, 2022. At around 11:00 a.m., Plaintiffs were sitting in vehicular traffic when Burger, in a patrol car, told Knepper, who was in the driver's seat of a different car, to drive into a nearby parking lot. FAC at ¶ 13, Dkt. No. 35. When Knepper asked why he was being pulled over, Burger responded that "it doesn't matter, I could pull you over for anything and make up any reason." Presumably after pulling over and parking, as instructed, Burger approached Plaintiffs' vehicle, while Knepper exited the vehicle

with his cellphone in hand. Burger repeatedly attempted to take Knepper's phone. Vergura then approached Knepper and Burger, and Knepper gave his phone to Lum-King so she could record the incident. *Id*.

Burger and Vergura began using force against Knepper, including striking his head and using pepper spray. *Id*. Due to this force, Knepper's pants fell off. Burger also repeatedly struck Knepper with his knee and twisted Knepper's ears. During this time, Knepper was not resisting. Burger stopped when Apo arrived on the scene. Apo "began" to handcuff and arrest Knepper. Vergura restrained Knepper and Burger then continued to use knee-strikes against Knepper. Apo also used his fist to strike Knepper. Burger, Vergura, and Apo took Knepper to the ground, and Burger placed his knee on Knepper's head, forcing it into the asphalt. Knepper was handcuffed, while Burger continued to punch him. Knepper was then picked up and taken to the sidewalk where Burger again used knee-strikes and kicked Knepper, all, according to Knepper, without provocation or resistance. *Id*.

After Knepper's pants fell off, Lum-King exited Plaintiffs' vehicle, while Juarez secured the same. *Id*. Juarez detained Lum-King by grabbing her bag and trying to grab the phone Knepper had given her. Juarez pulled on the bag again, causing the bag to strike Lum-King in the face. *Id*. at ¶ 14.

After these events, the Officer Defendants "fabricated a false account of the incident in an attempt to cover up and justify their conduct." *Id*. at ¶ 15.

## II. The FAC

Five claims are asserted in the FAC under 42 U.S.C. Section 1983 (Section 1983) and State law. Dkt. No. 35. These claims are brought against the Officer Defendants in their individual capacities and/or the City. In Claim One, the FAC alleges that Burger, Vergura, and Juarez violated Plaintiffs' First Amendment rights to freedom of expression, speech, and assembly, when the officers interfered with Plaintiffs' use of Knepper's cellphone to record the events on April 7, 2022. In Claim Two, the FAC alleges that the Officer Defendants violated Plaintiffs' Fourth Amendment right to be free from unreasonable searches and seizures in using excessive force and wrongfully arresting Plaintiffs.

In Claim Three, the FAC alleges that the City is liable for Plaintiffs' injuries under Section 1983 because it had policies, practices, or customs, including a failure to adequately train police officers, that were the "moving force" behind those injuries. In Claim Four, the FAC alleges negligence claims under State tort law against all Defendants, including the City's alleged failure to adequately train its police officers. In Claim Five, the FAC alleges battery claims under State tort law against all Defendants.

## III. The Motion to Dismiss

The City moves for dismissal of Claims Three through Five, as well as any claim brought under the Fourteenth Amendment, pursuant to Federal Rule of Civil

Procedure 12(b)(6). Dkt. No. 37-1. Specifically, the City argues that Plaintiffs have failed to adequately allege any theory of *Monell* liability in Claim Three. The City further argues that any claim under the Fourteenth Amendment fails as a matter of law because the First and Fourth Amendments provide "more explicit" sources of constitutional authority. Finally, the City argues that Plaintiffs' State tort claims fail because Plaintiffs have failed to adequately plead any claims for negligent training, supervision, or retention.

In opposition to the motion to dismiss, Dkt. No. 49-1, Plaintiffs first respond that they have adequately alleged *Monell* theories of liability for unlawful customs, a failure to train, and ratification. Second, Plaintiffs argue that Claims One and Two are "enforceable" against the Officer Defendants "through" the Fourteenth Amendment. Third, Plaintiffs argue that they have adequately pled their State tort law claims for negligent training, supervision, and retention. Plaintiffs also observe that the City failed to address their battery claims or other claims of negligence alleged in the FAC.

After a reply in support of the motion to dismiss was filed, Dkt. No. 52, the Court elected to decide the motion without a hearing, Dkt. No. 53. This Order now follows.

## STANDARD OF REVIEW

Rule 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Pursuant to *Ashcroft v. Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In addition, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8(a)(2). *Id.* at 679.

When a complaint fails to state a plausible claim, leave to amend should be given when "justice so requires." Fed.R.Civ.P. 15(a)(2). Justice does not require

leave to amend when (1) it would prejudice an opposing party, (2) it is sought in bad faith, (3) it would produce an undue delay in litigation, (4) it would be futile, or (5) there has been repeated failure to cure a deficiency.  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008); *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).

## DISCUSSION

I. **Claim Three**

The Court begins by setting forth the legal framework for suing a municipality, such as the City, under Section 1983.  In *Monell*, the U.S. Supreme Court held that a municipality could be "sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or is "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  *Id*. at 690-691.  In addition, the Supreme Court has held that a municipality can be liable under Section 1983 for a "failure to train" when "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton v, Harris*, 489 U.S. 378, 388 (1989).  A municipality cannot be held liable under Section 1983 "*solely* because it employs a tortfeasor–or,

in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691 (emphasis in original).

As a result, a plaintiff can allege municipal liability under Section 1983 in one of three ways. First, a municipality can be liable when it or a person with final policymaking authority within the municipality expressly enacts or authorizes a policy respecting a challenged action. *Id*. at 690; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-483 (1986) ("The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."). In this regard, a municipality can also be liable when a final policymaker "ratifie[s]" a subordinate's conduct and the basis for it. *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1066-67 (9th Cir. 2013). Second, a municipality can be liable for a custom that, although not expressly enacted, is "so permanent and well settled[,]" it operates with the force of law. *Monell*, 436 U.S. at 691 (quotation omitted). Third, a municipality can be liable for a failure to train its employees when such failure amounts to deliberate indifference towards the rights of its inhabitants. *City of Canton*, 489 U.S. at 388. In addition, a plaintiff must allege that a policy, custom, or failure to train actually caused a municipality's employees to commit the constitutional deprivation. *Id*. at 391; *Monell*, 436 U.S. at 694.

As an initial matter, here, in neither the FAC nor in their opposition to the motion to dismiss do Plaintiffs allege that an *official policy* of the City is implicated in this case. Therefore, the Court does not further address the same. Instead, Plaintiffs contend that they have adequately pled the following *Monell* theories: unofficial custom, failure to train, and ratification. Dkt. No. 49-1 at 8-11. The Court, thus, now addresses each of these theories in turn.

1. **Unofficial Custom**

Plaintiffs argue that, in light of six other incidents alleged in the FAC that occurred from 2012 to 2020, they have adequately alleged an unofficial custom of the City permitting the use of "unlawful force." *Id*. at 9. At this early stage of the litigation, and accepting the allegations of the FAC as true and accurate, the Court finds that Plaintiffs have alleged sufficient facts to raise their claim of an unofficial custom under *Monell* to the plausible, rather than speculative, level. *See Twombly*, 550 U.S. at 555. Specifically, citing at least five historical incidents, Plaintiffs allege, in non-conclusory allegations, other instances of excessive force being used by the City's police officers against non-resisting members of the public.[1] *See Jones v. Chapman*, 2015 WL 4509871, at *15 (D. Md. July 24, 2015) (denying a motion to dismiss claims of an unofficial custom of excessive force, in part, where

---

[1] To be clear, Plaintiffs allege *six* examples of the use of excessive force in prior cases. One example, which occurred in September 2014, though, merely alleges that "unlawful force" was used by the police officer, without any further explanation of the force used. FAC at ¶ 33. Given the conclusory nature of this assertion, the Court does not rely on the same for purposes of the instant finding.

the plaintiff identified "three purported instances of the use of excessive force [by police officers] prior to the occurrence"). While the City argues that these incidents are "broad, vague, and conclusory[,]" the Court disagrees. *See* Dkt. No. 37-1 at 4-5. The allegations, which provide details of the force used and the conduct of the alleged victim, are neither vague nor conclusory, at least for purposes of the instant motion to dismiss. There is also nothing overly "broad" about the alleged unofficial custom at issue here−permitting police officers to use excessive force on non-resisting members of the public.[2]

In its reply, for the first time, the City also argues that the Court should take "judicial notice" or "incorporate[e] by reference" newspaper articles and/or a State court docket sheet in order to comprehend that the historical incidents relied upon by Plaintiffs involve facts different than those alleged here and, thus, do not provide support for an unofficial custom. Dkt. No. 52 at 5-7 & nn. 1-8. The City, however, provides no legal authority for the Court taking judicial notice of so-called facts set forth in newspaper articles. *See Newman v. San Joaquin Delta Cmty. Coll. Dist.*, 272 F.R.D. 505, 516 (E.D. Cal. 2011) ("a party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice."). Further, although a court may take judicial notice of public records, such

---

[2]The City also argues that Plaintiffs have failed to adequately allege that any unofficial custom was the "moving force" behind their injuries. Dkt. No. 37-1 at 6-7. However, in context, it is plausible for an alleged custom of permitting excessive force to be the moving force behind Plaintiffs' injuries resulting from alleged excessive force.

as presumably a State court docket sheet, "it may do so not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."  *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (quotation omitted).  *See also Uyeda v. Schermer*, __ P.3d __, 2019 WL 1254695, at *8 (Haw. Mar. 19, 2019) ("Factual allegations, conclusions, and findings, whether authored by the court, by the parties or their attorneys, or by third persons, should not be noticed to prove the truth of the matters asserted even though the material happens to be contained in court records.") (quotation and citation omitted).

In summary, while the examples of alleged excessive force upon which Plaintiffs rely may, ultimately, turn out to provide no support for their claim of an unofficial custom – for instance, at summary judgment or trial – at *this* juncture, the Court finds that Plaintiffs have alleged a plausible *Monell* claim under the theory of an unofficial custom of the City permitting the use of excessive force by police officers.

    2.    **<u>Failure to Train</u>**

Plaintiffs argue that they have adequately alleged failures to train under *Monell* based upon the City's alleged failure to train regarding "closed-fist head strikes", not using force when an individual does not pose a threat, stopping others from using excessive force, and permitting individuals to record police officers

11

engaged in their official duties. Dkt. No. 49-1 at 10-11. The Court disagrees. First, other than simply saying that these allegations of training failure are adequate, Plaintiffs provide no support for the same. Second, an inspection of the FAC reveals that the alleged failures to train simply repackage the underlying factual allegations of the incident in question. This is how Plaintiffs create an alleged failure to train officers regarding "closed-fist head strikes." In other words, Plaintiffs fail to allege any training that the Officer Defendants received, how their training was inadequate, how the training caused any of the underlying conduct, or how different or additional training may have prevented the same. Plaintiffs also fail to identify any supervisors aware of the allegedly deficient training or how any such awareness could constitute deliberate indifference.

This part of Plaintiffs' *Monell* claim, therefore, is clearly inadequate. Nonetheless, should they so choose, Plaintiffs are permitted leave to amend the same in an attempt to correct the above-mentioned deficiencies.

### 3. Ratification

Plaintiffs argue that they have adequately pled a ratification claim under *Monell* because at least three final policymakers for the Honolulu Police Department deliberately chose not to investigate the Officer Defendants' conduct, even after the falsity of their accounts "became apparent" through a recording of the incident. Dkt. No. 49-1 at 11. The Court disagrees. Notably, ratification "generally

requires more than acquiescence, and a mere failure to discipline does not amount to ratification of allegedly unconstitutional actions." *Dodge v. Evergreen Sch. Dist.*, __ F.4th __, 2022 WL 17984059, at *14 (9th Cir. Dec. 29, 2022) (quotations and ellipsis omitted); *see Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999) ("[I]t is well-settled that a policymaker's mere refusal to overrule a subordinate's completed acts does not constitute approval."). Here, the only conduct to which Plaintiffs point is, at best, acquiescence, *i.e.*, the failure to investigate the Officer Defendants alleged false accounts of the incident. In other words, there is no allegation here that the alleged policymakers "adopted and expressly approved" the Officer Defendants' conduct, as Plaintiffs acknowledge is necessary. *See* Dkt. No. 49-1 at 11.

Therefore, this part of Plaintiffs' *Monell* claim is also clearly inadequate. Nonetheless, should they so choose, Plaintiffs are permitted leave to amend the same in an attempt to correct the above-mentioned deficiencies.

## II.     Fourteenth Amendment

The City argues that, to the extent Plaintiffs attempt to raise a claim under the Fourteenth Amendment, any such claim should be dismissed because other constitutional provisions provide "more explicit" sources of authority. Dkt. No. 37-1 at 11-12. Based upon the Court's review of the FAC and Plaintiffs' opposition, the Court finds this issue to be moot. Specifically, review of the FAC

reflects that there is no *standalone* claim under the Fourteenth Amendment. Rather, the two claims at issue here, Claims One and Two, are respectively, brought under the First and Fourth Amendments. *See* FAC at ¶¶ 37, 44. Moreover, to the extent there was any doubt in this regard, Plaintiffs' opposition makes clear that their purpose in citing the Fourteenth Amendment was merely to *enforce* their alleged First and Fourth Amendment guarantees against the City. *See* Dkt. No. 49-1 at 12. In this light, because no *standalone* Fourteenth Amendment claim is alleged in the FAC, this issue is moot.[3]

### III.  Claims 4 and 5

The City argues that Plaintiffs' two State tort claims, Claims 4 and 5, should be dismissed for "various reasons." Dkt. No. 37-1 at 12. However, although acknowledging that Plaintiffs allege claims of negligence, battery, and negligent training, supervision, and retention, the City then only explains why the latter claims—for negligent training, supervision, and retention−should be dismissed. *See id.* at 12-13. Therefore, because the City makes no argument as to why Plaintiffs' claims of negligence (other than training, supervision, and retention) and battery should be dismissed, the Court declines to dismiss Claims 4 and 5 in those respects.

---

[3]So it is clear, in light of the foregoing, should Plaintiffs choose to file a further amended complaint, they do NOT have leave to add a standalone claim under the Fourteenth Amendment.

As for Plaintiffs' claims of negligent training, supervision, and retention, the City argues that they are inadequately pled because the FAC fails to allege that the City should have known one of its officers would commit a tort against another person. *Id*. The Court agrees. As Plaintiffs acknowledge in their opposition, liability for negligent training, supervision, and retention is premised upon "foreseeability" or "whether the risk of harm from the dangerous employee" was "reasonably foreseeable…." Dkt. No. 49-1 at 12 (citing cases). Here, Plaintiffs have alleged no facts indicating that, because of the Officer Defendants' alleged lack of training or presence on the police force, it was reasonably foreseeable to the City that they were either dangerous or posed a risk of harm to others. There are simply no such facts alleged in the FAC. As a result, this claim is also inadequate. Nonetheless, should they so choose, Plaintiffs are permitted leave to amend the same in an attempt to correct the above-mentioned deficiencies.

## **CONCLUSION**

For the reasons stated herein, the motion to dismiss, Dkt. No. 37, is GRANTED IN PART and DENIED IN PART. Plaintiffs may have until August 18, 2023 to amend any claims dismissed herein and for which leave to amend has been granted. Should Plaintiffs choose to so amend, they must also re-allege all other claims not dismissed herein and on which they wish to proceed in this action.

Should Plaintiffs choose not to file a further amended complaint by August 18, 2023, this action will proceed on the claims remaining in the FAC.

IT IS SO ORDERED.

Dated: July 28, 2023 at Honolulu, Hawai'i.

Derrick K. Watson
Chief United States District Judge